## Case No. 14,938.
### UNITED STATES v. DE HARO.
[1 Cál. Law J. 199.]

District Court, N. D. California. Dec. 17, 1862.

MEXICAN LAND GRANTS — AMBIGUOUS DECREE OF CONFIRMATION—REJECTION OF SURVEY.

[In a clear case of mistake in a decree of confirmation, whereby the claimants might be given more land than they are entitled to, or have claimed, it is the duty of the court, on objections to a survey, to lay hold of any ambiguity or discrepancies in the language of the decree, which will enable it to restrict the claimant to the land actually granted, occupied, and claimed.]

Survey of lot at Mission Dolores. Rejected [by the board] December 17, 1862. [Confirmed by the district court. Case unreported. Affirmed upon appeal by the supreme court. 22 How. (63 U. S.) 293. The question of the survey was considered and an opinion ren-

dered, which held the grant as covering a 100-vara lot along Dolores street. Case No. 14,937. The case is now heard to correct what is claimed to be an error as to the size of the lot.]

OPINION OF THE COURT. It appears, from De Haro's petition to the board, that, previously to the year 1843, he had been put in possession by the prefect, José Ramon Estrada, of certain houses in the mission of Dolores, known as those of the major domos. He therefore asked the governor to legitimate his right of property in them, and to add 50 varas square to the eastward of them. In conformity with this petition, the governor, on the 16th August, 1843, ratified and confirmed the concession of the prefect, "together with—'juntamente con'—fifty varas to the eastward of the said houses, as solicited." In the petition of the claimants to the board, and in the opinion delivered by the latter, the land is described as a single lot of the extent of 50 varas square. It is also stated in the petition that the concession by Estrada was for the same lot, and this concession was ratified by the governor. But this is evidently an erroneous construction of the petition and grant, for those papers show, very unequivocally, that De Haro merely obtained from the prefect the houses, and that he asked the governor to ratify that concession, and for an augmento, or addition, of 50 varas square to the east of them.

The decree of this court, which has been affirmed by the supreme court [22 How. (63 U. S.) 293], describes the land as a "fifty-vara lot, situate in the Mission Dolores, on which lot there is a house which formerly formed part of the establishment of the Mission Dolores, occupied by the major domos thereof, fronting on the plaza, etc., together with and adding thereto, fifty varas to the eastward of, and immediately adjoining, said houses." Under this decree, a survey has been made of two 50-vara lots,—one including the houses, and another, to the eastward and immediately adjoining, not the houses, but the first 50-vara lot. It would seem clear, from the terms of the petition and grant, that the land solicited was a 50-vara lot, including the houses in which De Haro then resided. It can hardly be supposed that he intended to ask for the houses and the land covered by them, and a lot lying wholly to the east of them; for, in that case, he would have no land in the rear of his house, and his lot would have been situated to the east of and wholly detached from it. That such was the understanding of the claimants appears from their own petition to the board, which only asks for a single 50-vara lot.

The decree entered in this court is obscure, and, to a certain degree, repugnant. In the first part it confirms to the claimant a lot on the northeast corner of Center and Dolores streets, fronting on the plaza, etc. The last clause is as follows: "Together with and add-ing 50 varas to the eastward and immediately adjoining said houses." As the houses stood upon the corner, it is evident that the 50-vara lot situated on the corner must embrace the site of the houses and a considerable piece of land to the eastward of them, for it is not pretended that the houses covered the whole of a 50-vara lot. The second clause of the decree, if it means by the words "50 varas," a lot 50 varas square adjoining the houses on the east, describes land already in a great part included in the first description. The 50 varas last spoken of could not, therefore, have been in addition to the first 50-vara lot; for it was for the same land, except that the first lot began at Dolores street,—that is, was on the corner,—while the second began at the easterly end of the houses, the only difference being a strip of land equal in breadth to the front of the houses.

But to construe the decree as intended to give two 50-vara lots, the second, in great part located on the ground included in the first, is not only to attribute to it an absurdity, but the effect would be to give to the claimants what they have not and could not have claimed under any construction of their grant. It is plain that either they are entitled to the exact site of the houses and a lot 50 varas square to the eastward of them, or else, as they themselves represented to the board, to a single 50-vara lot, including the houses. They cannot, in any event, be entitled to a lot 50 varas deep, on the corner, and another lot 50 varas deep adjoining the houses on the east; for this would be to give them, not the houses and a 50-vara lot in addition, but a lot on the corner with a front equal to the front of the houses, and a depth of 50 varas, and a 50-vara lot in addition.

The attempt, under this grant and decree, to survey two separate 50-vara lots is wholly inadmissible. It is not warranted by the terms of the decree, and is repugnant to the language and obvious meaning of the grant, as well as the claimants' own petition to the board. The claim for a single 50-vara lot, presented to the board, was rejected. It was not suggested to this court, on appeal, that any larger tract was claimed. The notice of appeal, signed by the attorneys for the claimant, is indorsed, "Claim for 50 varas square at the mission." In the petition for a review of the decision of the board, filed in this court, the land is again described as a lot 50 varas square at the Mission Dolores. And the witness produced by the claimants, on the faith of whose testimony the claim was confirmed, only speaks of a single lot, on which the house inhabited by De Haro was situated, and which was of the extent of 50 varas square. It is nowhere pretended that the claimants were entitled to the land covered by the houses and a 50-vara lot in addition; still less, to two 50-vara lots,—one on the corner, including the houses, and a second to the eastward of it.

The decree of the court was evidently intended to follow the language of the grant by confirming the claim to the houses and to a 50-vara lot to the eastward of them. Had this description been adopted, the question as to the true meaning of the grant would have been presented by the decree precisely as by the original papers; and what that meaning is, as understood by the claimant himself, is abundantly clear. But the decree, unfortunately, does not conform to the language of the grant, for it confirms to the claimants, not the houses, and a 50-vara lot to the eastward of it, but a 50-vara lot on the corner, including the houses, and "50 varas to the eastward of said houses." This discrepancy in the decree appears for the first time to have suggested the idea of obtaining two 50-vara lots, instead of the one lot granted; and the record shows that a notice was filed of a motion to reform the decree by adding to the description of the property contained in said decree the words, "together with a parcel of land, 50 varas square, to the eastward thereof." This motion does not appear to have been made, for no order granting or refusing it is found. The decree was subsequently set aside on the discovery, by the district attorney, that the grant bore date when Alvarado was not in office; but, on the production of the original papers, it appeared that the date of the papers had been altered, that they were originally dated during Alvarado's official term, and that the alteration had been made against the interests of the claimants, and was not to be imputed to them. The original decree was therefore reinstated, without amendment. If the language of the decree were explicit and unequivocal, it might be too late now to disturb it, notwithstanding that it might give to the claimants more than they asked for, or any of their witnesses pretended they were entitled to. But in so clear a case of mistake I consider it my duty to lay hold of any ambiguity or discrepancy in its language to enable me to restrict the confirmation to the land actually granted and occupied and claimed. The decree does not say that a parcel of land, 50 varas square, adjoining the houses, shall be added, but "50 varas," which is a line, and not a piece of ground. It says, too, that it shall be in addition to the 50-vara lot on the corner; but this it cannot be, for we have seen that the lot on the corner will include the greater part of a second lot, adjoining the houses on the east.

I think that, in a case like the present, where the decree, prepared by counsel, has evidently been signed by the circuit judge improvidently, and under the idea that it described the land mentioned in the grant, where the claimants have never pretended to have obtained but one lot 50 varas square, where their petition to the board and to this court was for a lot of those dimensions only, and all their testimony referred to a single 50-vara lot, it would be absurd and unjust to allow them, under a decree such as this, to obtain any more land than they were justly entitled to. The survey must therefore be set aside, and a new survey made of a 50-vara lot, beginning at the southwest corner of the old house of the major domos of the mission; running thence easterly, with the line of said house, 50 varas; thence, at right angles, 50 varas; thence, at right angles, parallel with the first line, 50 varas; and thence to the point of beginning.

[For other of the De Haro grants, see Cases Nos. 14,939–14,941.]